UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RANDALL KNIGHT,

       Petitioner,

v.               **DECISION AND ORDER**
                 11-CV-919S
                 10-CR-179S

UNITED STATES OF AMERICA,

       Respondent.

## I. INTRODUCTION

*Pro se* Petitioner, Randall Knight, moves to vacate, set aside, or correct his sentence and conviction pursuant to 28 U.S.C. § 2255. For the reasons discussed below, this Court finds a hearing on this motion unnecessary and denies Knight's motion.[1]

## II. BACKGROUND

On July 3, 1994, Andie Gasper was found stabbed to death in the driver's seat of his pickup truck in the Town of Yorkshire, New York. (Isaacson Aff., 4; Docket No. 1.) Police suspected Petitioner Knight committed the crime. (Id., ¶¶ 6–10.) After an investigation, Knight was charged with and tried for second-degree murder in Cattaraugus County. (Id., 9.) On September 6, 1995, however, he was acquitted of that crime. (Id., ¶ 10.)

---

[1] § 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. "By implication, if the reviewing court finds that the record of the underlying criminal action does conclusively show that the petitioner is entitled to no relief, it may dismiss the petition on the basis of the parties' submissions and need not hold an evidentiary hearing." Yushuvayev v. United States, 532 F. Supp. 2d 455, 471 (E.D.N.Y. 2008).

But that was not the end of the case against Knight. In April of 2009 the FBI, in conjunction with the Cattaraugus County Sheriff's Office cold case unit, renewed their investigation. This investigation revealed damaging evidence against both Knight and the victim's wife, Cheryl Gasper. Evidence demonstrated that Cheryl Gasper solicited Knight, with whom she had been having an affair, to murder her husband. (Plea Agreement, ¶ 4; Docket No. 9.) The two conspired to share in the proceeds of Andie Gasper's $100,000 life insurance policy. (Id.)

Consequently, new charges were then lodged against Knight, this time in federal court. On July 14, 2010, Knight pleaded guilty to the federal murder-for-hire statute, 18 U.S.C. § 1958.[2] (Docket Nos. 9, 10.) Several months later, this Court sentenced Knight to 288 months of imprisonment. (Docket Nos. 17, 20.)

He did not appeal that conviction, but less than year later, Knight timely filed the present motion to vacate his conviction and sentence. (Docket No. 21.)

### III. DISCUSSION

**A.    Standard of Review**

Twenty-eight U.S.C. § 2255 allows federal prisoners to challenge the constitutionality of their sentences. In pertinent part, that section provides:

---

[2]Because this offense contains different elements than the New York second-degree murder charge and because it was brought in federal court, the Double Jeopardy Clause, which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," U.S. Const., amend. V, was not implicated. See United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993); Heath v. Alabama, 474 U.S. 82, 89, 106 S. Ct. 433, 438, 88 L. Ed. 2d 387 (1985) (quoting Westfall v. United States, 274 U.S. 256, 258, 47 S. Ct. 629, 629, 71 L .Ed. 1036 (1927) (Holmes, J.) ("The proposition that the State and Federal Governments may punish the same conduct 'is too plain to need more than statement.'").

2

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

The Second Circuit has held that a "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)).

**B.  Knight's § 2255 Motion**

Knight advances six grounds for relief, including arguments that he was denied effective assistance of counsel and that his conviction violated the Ex Post Facto Clause of the United States Constitution. See U.S. Const. Art. 1, §§ 9,10.

Although Knight did not file a direct appeal, his petition – at least on ineffective assistance of counsel grounds – is not procedurally barred. See Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693, 155 L. Ed. 2d 714 (2003) (general rule that claims not raised on direct appeal may not be raised on collateral review absent cause and prejudice does not apply to an ineffective-assistance-of-counsel claim); Yick Man Mui v. United States, 614 F.3d 50, 54 (2d Cir. 2010) (same). Nor is his petition barred by the provision in his plea agreement wherein he agreed not to collaterally attack his sentence.

3

See Parisi v. United States, 529 F.3d 134 (2d Cir. 2008) (though generally enforceable, waiver cannot bar ineffective-counsel claim if there is a connection between alleged ineffectiveness and voluntary nature of plea).

Although Knight raises various grounds for relief, most of those grounds are simply variations on one central premise: Knight was convicted of a crime for which the statute of limitations had expired.[3]

Though seemingly simple, this claim requires some explanation. In July of 2010, Knight pleaded guilty under the federal murder-for-hire statute for a crime he committed in the same month 16 years earlier. That statute makes it unlawful to

> travel[] in or cause[] another (including the intended victim) to travel in interstate or foreign commerce, or use[] or cause[] another (including the intended victim) to use the mail or any facility in interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value.

18 U.S.C. 1958(a).

Before September 13, 1994, "if death result[ed]" in the commission of this crime, the maximum penalty was life imprisonment. By operation of 18 U.S.C. § 3282(a), the general "catchall" federal criminal statute of limitations, the limitations period for this crime

---

[3]The first four grounds reflect this contention. In Knight's fifth and sixth grounds for relief, he asserts that he was denied a right to appeal and that his "conviction/plea was obtained by use of a coerced confession." (Motion to Vacate at 6; Docket No. 21.) Knight, however, provides no further elaboration either in the motion itself or in the two briefs he filed in support thereof. Without further information, this Court will deny the motion on these grounds. See Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (citing Newfield v. United States, 565 F.2d 203, 207 (2d Cir. 1977)) (motion supported by an affidavit including detailed and controverted issues of fact warrants a hearing, but "bald allegations" unsupported by evidentiary facts do not).

4

was five years, as it was for all non-capital federal offenses.[4] But that changed on September 13, 1994, when, as part of the Violent Crime Control and Law Enforcement Act, Congress amended § 1958 by increasing the maximum punishment to death. Pub. L. No. 103–322, §§ 60003(a)(12), 330016(2)(c), 108 Stat. 1796, effective September 13, 1994. Because there is no statute of limitations on an indictment for an offense punishable by death, see 18 U.S.C. § 3281, a present-day murder-for-hire that results in a death is not subject to any statute of limitations.

Here, there is no dispute that Knight completed his crime in July of 1994, two months before the amendment became effective. Knight therefore contends that the five-year-limitation period applies to him, and correspondingly, that the law violates the Ex Post Facto Clause of the United States Constitution. Indeed, should the pre-September 1994 law apply, the statute of limitations would have long since expired by the time Knight pleaded guilty. And if that were the case, Knight would have a viable ineffective-assistance-of-counsel claim. See United States v. Hansel, 70 F.3d 6, 8 (2d Cir. 1995) (per curiam) (despite guilty plea, court allowed ineffective-assistance claim based on counsel's failure to move to dismiss counts as time-barred, as petitioner "would not have pled guilty to counts that he knew to be time-barred").

Yet typically, this claim would be a non-starter. "The long-standing rule in this [C]ircuit is that Congress has the power to extend the period of limitations without running afoul of the [E]x [P]ost [F]acto [C]lause, provided the original period has not already run."

---

[4]The federal criminal code contains two general statute-of-limitations provisions. The usual limitations period, pursuant to 18 U.S.C. § 3282, is five years. But "[a]n indictment for any offense punishable by death may be found at any time without limitation." Id. § 3281.

5

United States v. Morgan, 113 F.3d 1230 (2d Cir. 1997) (unpublished); see United States v. Madia, 955 F.2d 538, 539–40 (8th Cir. 1992) ("The law is settled that extending a limitation period before a given prosecution is barred does not violate the [E]x [P]ost [F]acto clause"); Falter v. United States, 23 F.2d 420, 425-26 (2d Cir.1928) (Hand L., J.); United States v. Roselli, No. 93-CR-220, 1994 WL 4195, at *3 (N.D.N.Y. Jan. 3, 1994) ("[T]he court concurs with the jurisdictions which have unanimously ruled that Congress does not violate the ex post facto clauses of the United States Constitution when it extends the statute of limitations for a crime where the original time period has not expired"); see also Stogner v. California, 539 U.S. 607, 618, 123 S. Ct. 2446, 2453, 156 L. Ed. 2d 544 (2003) (holding that extension of statute of limitations after its expiration is prohibited as ex post facto, but distinguishing such a scenario from cases where statute has not run). Because Congress amended § 1958 only two months after Knight committed the crime, the amendment fell safely within the limitations period as it applied to him.

But there is one complication: Congress did not directly extend the statute of limitations for this crime; rather, it increased the maximum punishment for murder-for-hire, and thereby only indirectly extended the relevant statute of limitations. At the outset, Knight correctly notes that under the Ex Post Facto Clause he could not have been sentenced to death. See Collins v. Youngblood, 497 U.S. 34 , 41, 111 L. Ed. 2d 30, 110 S Ct. 2715 (1990) (citing Beazell, 269 U.S. at 169) (statute that "makes more burdensome the punishment for a crime after its commission . . . is prohibited as ex post facto"); United States v. Pope, No. (S3)94CR.631 (JSM), 2003 WL 21271915, at *1 (S.D.N.Y. May 30, 2003), aff'd, 24 F. App'x 680, 682 (2d Cir. 2005) (defendant could not be sentenced to death because 18 U.S.C. § 1958 was amended after defendant committed the crime). In

6

other words, the availability of the death penalty applies only prospectively. But the question remains whether the law's indirect effect on the statute of limitations should also apply only prospectively. Of the two courts to have addressed this specific issue, one concluded that it should. In United States v. Owens, the district court, ruling on a motion to dismiss, noted that "Congress fully understood that the added punishment constitutionally could operate only prospectively" and it concluded "[a]s the increased penalty can apply only to those crimes committed after enactment of the Violent Crime Act, absent a contrary expression of Congressional intent, the same holds true for the statute's indirect impact on the statute of limitations." 965 F. Supp. 158, 164 (D. Mass. 1997).

The only other court to have considered this issue disagreed. Rejecting a Report and Recommendation advising the district court to grant a motion to dismiss, the court in United States v. Coleman faulted the Owens court for "not discuss[ing] the distinction between procedural and substantive changes in the law." No. 4:08-CR-701 CAS, 2010 WL 750101, at *5 (E.D. Mo. Mar. 2, 2010). It ultimately found "no meaningful difference between a statutory amendment that expressly changes a statute of limitations, . . . and one which indirectly changes the limitations period by changing the punishment." Id.

Like the Coleman court, this Court finds the constitutional prohibition on the death penalty to be unrelated to the relevant statute of limitations. It is clear that if the statute of the limitations were not implicated by the amendment, Knight would have no cause to complain, as he was sentenced to a term of years, not death. There is thus no actual difference, as it applies Knight, between the pre-September 1994 law and the post-September 1994 law except for its effect on the statute of limitations – a statute which Congress was free to extend as long as the original period had not run. This Court, like

the court in Coleman, finds it immaterial that the change was done indirectly rather than directly. The practical result of the change was an extension of the limitations period. This was permissible.

In support of its contrary conclusion, the Owens court relied on Congress' lack of express intent in changing the statute of limitations. But this Court finds that reasoning to be unpersuasive. This is so for three reasons.

First, if, as noted by the Owens court, Congress was aware that increased punishment applied only prospectively, it would also have been aware that expanded statutes of limitations apply retroactively.[5] See, e.g., Stogner, 539 U.S. at 618–19 (collecting cases as far back as the 1800s standing for this proposition).

Second, several courts of appeal have recognized that Congress need not state its intention expressly, or even directly, when extending a statute of limitations for crimes in which the original period has not yet expired. See, e.g., United States v. Gibson, 490 F.3d 604, 609 (7th Cir. 2007) (upholding the application of 18 U.S.C. § 3296, which "effectively" – though not directly – "enlarges the limitations period," in a case where the limitations period had begun but not yet expired), *cert. denied*, 128 S.Ct. 1646 (2008).

Third, the rationale behind the doctrine that Congress can amend a statute of limitations within the relevant time period applies here with the same force as if Congress acted directly. The doctrine traces its origin in this Circuit to Judge Learned Hand's decision in United States v. Falter, 23 F.2d at 425. There, Judge Hand's finding – that such an amendment does not constitute an ex post facto law – turned on notions of

---

[5]With, of course, the qualification that the original period had not yet expired.

fairness. "Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life," wrote Judge Hand. Id. With his trademark vibrant language, he concluded that "[f]or the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on[], it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." Id. at 426.

The United States Supreme Court recognized the continuing validity of the principle 75 years later in Stogner, and it applies equally to this case. For all practical purposes, the deadline to bring this charge was simply extended, and the change in the law, though effected through indirect means, renders Knight's conviction no more unfair than if it were amended directly. See Coleman, 2010 WL 750101, at * 4–5.

Accordingly, pursuant to amended § 1958 and 18 U.S.C. § 1832, no statute of limitations applied to Knight's crime. He therefore cannot sustain an ineffective-assistance-of-counsel claim, and his petition will be denied.

## IV. CONCLUSION

Congress can extend a statute of limitations so long as that statute has not run on the accused. By increasing the maximum penalty under 18 U.S.C. § 1958 only two months after Knight's crime, Congress effectively amended the applicable statute of limitations well within the then-applicable 5-year limitation time period. Knight's conviction therefore did not run afoul of the Ex Post Facto Clause. By extension, Knight's attorney could not have been ineffective for failing to raise a statute of limitations defense that did not exist. Knight's motion to vacate, set aside, or correct his sentence and conviction is therefore denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Petitioner's Motion to Vacate, Set Aside or Correct his Sentence and Conviction pursuant to 28 U.S.C. § 2255 (Docket No. 21) is DENIED.

FURTHER, that the Clerk of the Court is directed to the close case identified as 11-CV-919.

SO ORDERED.

Dated:   January 31, 2013
         Buffalo, New York

                                               /s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                               Chief Judge
                                               United States District Court